IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

REBA GAIL CLELAND, and
TERRY W. CLELAND,

    Plaintiffs,

v.

                                CV 514-076

DOLGENCORP, LLC, d/b/a
Dollar General,

    Defendant.

**O R D E R**

Three motions are currently before the Court: (1) Plaintiffs' motion to amend (doc. 47); (2) Defendant's motion for summary judgment with respect to Plaintiff Reba Gail Cleland's claims (doc. 35); and Defendant's motion for summary judgment with respect to Terry Cleland's claim (doc. 36). For the reasons discussed below, Plaintiff's motion to amend is **DENIED**, Defendant's motion for summary judgment with respect to Plaintiff Reba Gail Cleland's claim is **DENIED in part and GRANTED in part**, and Defendant's motion for summary judgment with respect to Plaintiff Terry Cleland's claim is **GRANTED**.

## I. Factual Background

The claims presented in the case all arise out of Plaintiff Reba Gail Cleland's employment with Defendant DOLGENCORP, LLC ("Dollar General"). The claims, however, are based on separate and distinct events. Below, for the sake of clarity, the Court separates the facts surrounding the different claims. The facts presented are the facts taken in the light most favorable to Plaintiffs.

### 1. The Missing Money and Ms. Cleland's Termination

Ms. Cleland worked as an assistant manager at the Nahunta, Georgia Dollar General store. Her direct supervisor was Tonya Thomas, and the district manager for that location was Anna Page. As part of Ms. Cleland's job duties, she would deposit Dollar General's daily receipts with a local bank. On February 9, 2013, Ms. Cleland discovered that the February 8 receipts had not been deposited. According to Ms. Cleland, she called Ms. Thomas about her discovery, and Ms. Thomas informed her to leave one of the day's earnings at the store and deposit the other. Ms. Cleland maintains that she did so.

At some point, Dollar General's bank called Dollar General and informed it that the bank had not received any money for February 8. Anna Page and someone from Dollar General's loss-prevention division visited the store and interviewed Ms.

2

Cleland about the missing money. Ms. Cleland apparently maintained that she took the money to the bank. But the record is not clear as to whether Ms. Cleland ever specified that she had been directed to deposit only a portion of the money. After Dollar General was unable to locate the money, it called the local police. Someone from the Nahunta Police Department interviewed Ms. Cleland, and she again maintained that she had deposited the money.

Dollar General placed Ms. Cleland on leave following the incident, and it terminated her employment on March 19. Another employee found the missing money in July 2013. Tonya Thomas instructed that employee not to tell Ms. Cleland about the discovery. That employee, however, did tell Ms. Cleland. Ms. Cleland alleges that Dollar General acted negligently when it accused her of stealing the missing money and that Dollar General's negligence caused her emotional distress.

## 2. Ms. Cleland's Job Duties

Ms. Cleland's position with Dollar General required that she be a "key-holder." As such, Ms. Cleland was required to be available to the cashiers and customers while in the store. This included being available during her lunch break. Indeed, Ms. Cleland claims that she had been instructed that she could not leave during her lunch break when she was the only manager on duty. And she asserts that, anytime she was the only key-

3

holder on duty, she worked during her lunch break. Ms. Cleland, however, did not clock back in during her lunch break because Ms. Thomas had informed her that she was required to take a one-hour lunch break. Ms. Cleland also claims that she worked off-the-clock hours at the end of many days. Specifically, she maintains that she would often clock out and then make sure that the bathrooms had been cleaned and the floors mopped.

## II. Procedural Background

Plaintiffs initiated this action on October 6, 2014, and amended their complaint on January 8, 2015. (Docs. 1, 17.) Plaintiffs' amended complaint essentially asserts five causes of action: (1) a violation of the Fair Labor Standards Act ("FLSA"); (2) a violation of Ms. Cleland's Fourth Amendment rights; (3) defamation; (4) negligent infliction of emotional distress; and (5) loss of consortium for Plaintiff Terry Cleland. Dollar General now moves for summary judgment on each of these claims, and Plaintiffs request leave to amend their complaint.

## III. Legal Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of

5

showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint.

See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of the Court gave Plaintiffs notice of the motions for summary judgment and informed them of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 37-38.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

Additionally, as discussed more thoroughly below, a motion to amend is governed by Federal Rule of Civil of Procedure 15, and courts generally freely grant leave when necessary. However, the Court has discretion to deny leave when appropriate. See Fla. Evergreen Foliage v. E.I. DuPont De Nemours and Co., 470 F.3d 1036, 1041 (11th Cir. 2006). And when a motion to amend is filed outside the deadline set by the Court's scheduling order, the moving party must demonstrate good cause to amend the scheduling order. Fed. R. Civ. P. 16.

### IV. Discussion

1. **Plaintiffs' Motion to Amend**

Plaintiffs wish to amend their complaint to bolster the

factual allegations contained within it and, as Dollar General points out, to add a claim for unpaid wages pursuant to O.C.G.A. § 34-4-3, Georgia's minimum-wage statute. Dollar General argues that Plaintiffs have not shown good cause under Federal Rule Civil Procedure 16.

Pursuant to Federal Rule of Civil Procedure 16, a court is required to issue a scheduling order that must include, among other things, a deadline to amend pleadings. Fed. R. Civ. P. 16 (b). A scheduling order may be amended only for good cause. Id. "The good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998).

In this case, the Court issued a scheduling order that required the parties to make all amendments to pleadings no later than January 9, 2015. (Doc. 14.) Plaintiffs filed their motion to amend eight months after this deadline. And Plaintiffs have not shown good cause. Indeed, with respect to the claim under O.C.G.A. § 34-4-3, Plaintiffs' brief in support of their motion admits that the claim arises from the same set of facts that support every other claim raised in this case. With respect to Plaintiffs' additional factual allegations, Plaintiffs assert merely that discovery in this case unveiled additional facts that support their claims. Neither of these

8

reasons establish good cause. Accordingly, the Court **DENIES** Plaintiffs' motion to amend.[1]

### 2. Dollar General's Motions for Summary Judgment

As a preliminary matter, Ms. Cleland has conceded that her Fourth Amendment claim fails because there is no state action involved and that her defamation claim fails because the statute of limitations has run. Accordingly, the Court **GRANTS** summary judgment with respect to those claims. The Court will now address the remaining claims.

#### a. Ms. Cleland's claim for negligent infliction of emotional distress and Mr. Cleland's loss-of-consortium claim

Ms. Cleland essentially argues that Dollar General acted negligently when it accused her of stealing the missing money, and she seeks damages for her emotional distress. Dollar General argues that Ms. Cleland's claim must fail under Georgia law because she has not produced evidence that establishes that she suffered either an impact or a pecuniary loss.

Under Georgia law, a plaintiff asserting a negligence claim may generally recover emotional-distress damages only if he or she suffered an impact that resulted in a physical injury. OB-

---

[1] Dollar General also argues that, even if Plaintiffs were given leave to amend, an amendment adding the alleged claim under O.C.G.A. § 34-4-3 would be futile because that code section only applies in claims against employers not subject to federal minimum-wage laws. Dollar General asserts that it is subject to those federal laws. Because Plaintiffs have not shown good cause under Federal Rule of Civil Procedure 16, the Court declines to reach the merits of this argument.

GYN Assocs. of Albany v. Littleton, 386 S.E.2d 146, 149 (Ga. 1989), abrogated on other grounds, Lee v. State Farm Mut. Ins. Co., 533 S.E.2d 82 (Ga. 2000). Specifically,

> [i]n cases where mere negligence is relied on, before damages for mental pain and suffering are allowable, there must be an actual physical injury to the person, *or a pecuniary loss resulting from an injury to the person which is not physical*; such an injury to a person's reputation, or the mental pain and suffering must cause a physical injury to the person.

Littleton, 386 S.E.2d at 149 (citation omitted). That is, the pecuniary loss must be the result of an injury to the plaintiff. Phillips v. Marquis at Mt. Zion-Morrow, LLC, 699 S.E.2d 58, 61 (Ga. Ct. App. 2010) (finding that a plaintiff who suffered a pecuniary loss when her wallet was stolen and car vandalized could not recover emotional-distress damages because the loss did not stem from an injury to her person). The Court of Appeals of Georgia has also stated that "a plaintiff *may* recover damages for emotional distress based upon an injury to property that results in pecuniary loss if injury to the person is also present, even if that injury is not physical." Nationwide Mut. Fire. Ins. Co. v. Lam, 546 S.E.2d 283, 284 (Ga. Ct. App. 2001) (emphasis in original).

Ms. Cleland has not alleged that she suffered an impact. Instead, she claims that she is entitled to emotional-distress damages because she suffered a pecuniary loss when she lost her

10

job. Although the law on this issue is fairly muddled,[2] it is clear that a plaintiff must show at least that she suffered either (1) an injury (physical or nonphysical) that caused a pecuniary loss, Phillips, 699 S.E.2d at 61, or (2) an injury to property that resulted in a pecuniary loss and was accompanied by an injury, Lam, 546 S.E.2d 284-85.

Ms. Cleland argues that she suffered a pecuniary loss when Dollar General terminated her employment. This argument fails. First, Ms. Cleland has not argued that she suffered any injury arising from Dollar General's alleged negligence. She has only argued that she suffered emotional damages for which she seeks to recover, and such damages have not traditionally been considered a separate injury. See Owens v. Gateway Mgmt. Co., 490 S.E.2d 501, 502 (Ga. Ct. App. 1997) (concluding that the plaintiff's emotional-distress damages themselves were not the type of injury contemplated under the pecuniary-loss rule because "[t]o hold otherwise would be to allow bootstrapping of an extreme nature"); but see Oliver v. McDade, 762 S.E.2d 96, 99 (Ga Ct. App. 2014) (finding that a plaintiff who suffered depression that resulted in medical bills as a result of alleged negligence had satisfied the pecuniary-loss rule).

Putting aside any confusion as to what constitutes an injury for purposes of the pecuniary-loss rule, Ms. Cleland has

---

[2] See generally, Oliver v. McDade, 762 S.E.2d 96, 102-106 (Ga. Ct. App. 2014) (Andrews, J., dissenting).

11

not established that her pecuniary loss resulted from an injury. Ms. Cleland's alleged pecuniary loss arises from her loss of employment, and she has not attempted to explain how this pecuniary loss can be traced to a personal injury. Said differently, Ms. Cleland has failed to produce any evidence that her pecuniary loss "result[ed] from an injury to [her] person." Littleton, 386 S.E.2d at 149. Ms. Cleland is essentially arguing that Dollar General's negligence caused her to lose her job (her pecuniary loss) and that the negligence caused her emotional distress. She has not argued that any injury to her (whether physical or nonphysical) caused the pecuniary loss. Even assuming she suffered some injury, Ms. Cleland cannot prevail on her claim by simply arguing that she suffered both emotional distress and a pecuniary loss.

Furthermore, Ms. Cleland's claim also fails under Lam's interpretation of the pecuniary-loss rule because she did not suffer an injury to property when she lost her job because there is no evidence that she possessed a property right in her job. Shores v. Modern Transp. Servs., Inc., 585 S.E.2d 664, 665-66 (Ga. Ct. App. 2003). In Shores, a railroad worker was involved in a collision. Id. at 664. Although he did not suffer a physical injury as a result of the collision, he suffered post-traumatic stress disorder arising out of the collision, which led to his inability to work. Id. The court held that he did

not suffer an injury to property as contemplated in Lam because he did not have a right to his job because he was an at-will employee. Id. at 665-66. Here, even assuming that a personal injury exists, Ms. Cleland cannot base her pecuniary loss on the loss of her job because she has not established that she was anything other than an at-will employee.

Because Ms. Cleland has not established that she suffered a pecuniary loss as a result of an injury caused by Dollar General's negligence, her claim fails and the Court **GRANTS** summary judgment on this issue. Moreover, because Terry Cleland's loss-of-consortium claim is based on Ms. Cleland's claim for emotional distress, the Court **GRANTS** summary judgment on that claim.

### b. Ms. Cleland's FLSA claims

As noted above, Ms. Cleland claims that she is owed wages for time she worked off the clock. Ms. Cleland claims that she is owed for off-the-clock work performed during her lunch break and for work she performed after she clocked out at night. The Court addresses these claims separately below.

### i. Time worked over lunch

Dollar General contends that Ms. Cleland's claim based on the alleged hours worked during her lunch break must fail because (1) it did not suffer or permit her to work those hours and (2) she has not presented evidence to support that she

13

worked while she was off the clock.[3]

Under the FLSA, a plaintiff must establish that the employer "knew or should have known of the overtime work through actual or constructive knowledge." Lopez-Easterling v. Charter Commc'ns, No. 2:14-cv-01493-RDP, 2016 WL 892774, at *7 (N.D. Ala. March 9, 2016). "An employer is said to have constructive knowledge of its employee's overtime work when it has reason to believe that its employee is working beyond h[er] shift." Id. (citation omitted) (internal quotation marks omitted) (emphasis in original).

Here, Dollar General argues that it did not know that Ms. Cleland worked off the clock during her lunch break. To support its position, Dollar General has produced the affidavit of Anna Page in which Ms. Page avers that she was never aware that Ms. Cleland worked off the clock. (Doc. 35, Ex. 1 ¶ 14.). In response, Ms. Cleland points to another Dollar General employee's affidavit that essentially states that it was customary for assistant managers to work during lunch breaks while remaining clocked out. (See Doc. 44 at 11-14.) And Ms. Cleland testified that Ms. Page had been present at the store during lunch breaks when this work occurred. (Doc. 35, Ex. 5 at

---

[3] Dollar General also maintains that Ms. Cleland's claims should be dismissed because she did not plead them with the specificity required by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Because this matter is before the Court on a motion for summary judgment, the Court declines to apply this standard.

14

30.) Notably, Ms. Cleland also testified that she had been told that she was expected to help cashiers while on her break. (Id. at 28.) Drawing all reasonable inferences in favor of Ms. Cleland as the non-moving party, she has at very least created a factual dispute with respect to Dollar General's knowledge of her off-the-clock work.

Dollar General next argues that Ms. Cleland has not presented sufficient evidence that she worked overtime. Indeed, Dollar General claims that there is *no* evidence that Ms. Cleland performed the off-the-clock work. The Court disagrees.

Citing Johnson v. Corr. Corp. of Am., 606 F. App'x 945 (11th Cir. 2015), Dollar General argues that Ms. Cleland's claim must fail because she has not presented evidence of the exact number of off-the-clock hours she worked. In Jackson, the plaintiff claimed she was owed for 7.5 to 10 hours of overtime every week. Id. at 947. The court determined that the plaintiff's claim failed because she "never stated with any clarity or precision the number of hours she allegedly worked, the amount or nature of that work, where or when the work was completed, or anything else that would assist a factfinder in approximating Jackson's unpaid overtime." Id. at 951.

Here, however, Ms. Cleland has specified the exact nature of the work, where the work took place, and she has provided at least some estimate of how many hours she worked. Ms. Cleland

15

has produced evidence indicating that, during her lunch breaks when she was the only key-holder present, she was frequently — indeed, almost always — required to assist cashiers or customers. (See Doc. 44 at 4-5.) And she testified that she often would only be able to sit down and enjoy her lunch for 5 to 10 minutes per day. (Doc. 35, Ex. 5 at 37.)

Dollar General relies heavily on the fact that Ms. Cleland has not produced evidence that shows the exact overtime hours she worked.[4] The Court, however, is persuaded that Ms. Cleland has presented sufficient evidence for a reasonable factfinder to approximate the overtime hours she worked. See Lopez-Easterling, 2016 WL 892774, at *11 (finding that, although a plaintiff who claimed to have frequently worked off the clock during her lunch hour did not produce records detailing the hours she worked, she sufficiently created a factual dispute about whether the defendant violated the FLSA). Here, the fact that Ms. Cleland has testified to the exact nature of the work she performed combined with the evidence that it was essentially customary for Dollar General assistant managers to work through lunch while off the clock, is sufficient to create a factual dispute about whether Dollar General violated the FLSA.

---

[4] Ms. Cleland's counsel has provided the Court with a chart that she claims shows the exact hours Ms. Cleland worked off the clock on certain days. Ms. Cleland's counsel, however, failed to produce any evidence that explains how she prepared the chart. The Court, therefore, declines to view this chart as admissible evidence

Accordingly, the Court **DENIES** summary judgment on this issue.

### ii. Time worked after clocking out

With respect to Ms. Cleland's claim that she worked after clocking out at night, Dollar General similarly argues that Ms. Cleland has failed to produce evidence showing that Dollar General was aware of this work and that she has failed to produce any evidence that she performed the work. On this issue, the Court agrees with Dollar General. As noted above, Ms. Page averred in her affidavit that she was unaware that Ms. Cleland ever worked off the clock. Ms. Cleland has not pointed to any record evidence—and the Court has not located any—that rebuts this assertion with respect to this alleged off-the-clock work. Accordingly, the Court **GRANTS** summary judgment on this issue.

## V. Conclusion

For the reasons discussed above, Plaintiffs' motion to amend (doc. 47) is **DENIED**; Defendant's motion for summary judgment with respect to Plaintiff Reba Gail Cleland's claims is **DENIED in part and GRANTED in part**; and Defendant's motion for summary judgment with respect to Plaintiff Terry W. Cleland's claim is **GRANTED**.

**ORDER ENTERED** at Augusta, Georgia this 31ST day of March, 2016.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA